[No. 1171-2. Division Two. February 15, 1974.]

*In the Matter of the Petition of* THE CITY OF BELLINGHAM. THE CITY OF BELLINGHAM, *Respondent*, v. EIFORD CONSTRUCTION COMPANY, *Appellant*.

---

*T. B. Asmundson* (of *Asmundson, Rhea & Atwood*) and *Monheimer, Schermer, Van Fredenberg & Smith,* for appellant.

*Gordon G. Conger* (of *Preston, Thorgrimson, Ellis, Holman & Fletcher*), for respondent.

ARMSTRONG, J.—In December of 1970, the City of Bellingham commenced an action to acquire appellant's real property by condemnation for the construction of a sewage treatment plant. The trial on damages began October 26, 1971, before a jury, and a verdict was rendered fixing the amount of just compensation on November 5, 1971.

There is no dispute as to the facts with respect to the right of the appellant condemnee to be awarded reasonable attorney fees and reasonable expert witness fees. However, prior to entry of the judgment and award, but subsequent to the commencement of this action, the legislature amended RCW 8.25.070 to limit the amount of reasonable attorney fees authorized by this statute. There are two issues raised in this appeal. The first is whether the statute, as it related to costs and attorney fees, should have been applied as it existed at the commencement of the action, or as amended prior to entry of the verdict and judgment. We hold that the statute was applicable in its amended form. The second issue is whether the trial court incorrectly construed the statute as amended. We find no error.

The condemnee offered to stipulate to an order of immediate possession shortly after the adjudication of public use and necessity which occurred February 26, 1971. The City of Bellingham had not requested such a stipulation, nor did the city take possession of the property until entry of the final decree. Subsequent to February 26, in the first extraordinary session, 1971, the legislature amended RCW 8.25.070 in several particulars. The amendments became effective on August 9, 1971.

 The position of the appellant is apparently that when he offered to relinquish immediate possession, as one of the conditions precedent to availability of attorney fees pursuant to RCW 8.25.070 prior to amendment, a "contractual," "fixed," or "vested" right of some kind was created which the legislature could not impair by amendment. However, it is clear that the right to costs and attorney fees is purely a matter of statutory regulation. *Generaux v. Petit*, 172 Wash. 132, 135, 19 P.2d 911 (1933). The substantial and overwhelming weight of authority is to the effect that unless a contrary intent clearly appears from the statute, the right to costs and attorney fees, as well as the determination of the amount thereof, is governed by the statute in force at the termination of the action, rather than at the time of its commencement. 20 Am. Jur. 2d *Costs* § 7, at 9 (1965); 20 C.J.S. *Costs* § 3(b), at 263 (1940); Annot. 96 A.L.R. 1428 (1935); *State v. Cholewinsk*, 27 Conn. Supp. 286, 236 A.2d 339 (Super. Ct. 1967); *Hogan v. Ingold*, 38 Cal. 2d 802, 243 P.2d 1, 32 A.L.R. 834 (1952); *Mutual Benefit Health & Accident Ass'n v. Moyer*, 94 F.2d 906 (9th Cir. 1938); *Chicago & W. I. R.R. v. Guthrie*, 192 Ill. 579, 61 N.E. 658 (1901).

Since the 1971 amendments to RCW 8.25.070 became effective on August 9, 1971, more than 2 months prior to the entry of the verdict and judgment resolving the underlying controversy, we hold that the trial court correctly determined that the statute should be applied as amended.

The remaining question is whether the trial court

properly determined the amount of fees authorized by the statute as amended. The pertinent provisions of the 1971 amendment are as follows:

Reasonable attorney fees as authorized in this section shall not exceed the *general trial rate, per day for actual trial time and the general hourly rate for preparation as provided in the minimum bar fee schedule of the county or judicial district in which the proceeding was instituted,* or if no minimum bar fee schedule has been adopted in the county, then the trial and hourly rates as provided in the minimum bar fee schedule customarily used in such county. Not later than July 1, 1971 the administrator for the courts shall adopt a rule establishing standards for verifying fees authorized by this section. Reasonable expert witness fees as authorized in this section shall not exceed the customary rates obtaining in the county by the hour for investigation and research and by the day or half day for trial attendance.

(Italics ours.) Amended by Laws of 1971, 1st Ex. Sess., ch. 39, § 3.

The Whatcom County Bar Association minimum fee schedule was the applicable fee schedule for these proceedings. That schedule suggests a minimum trial rate of $250 per day, and a minimum hourly rate of $30 per hour. The trial court concluded that these rates constituted the maximum allowable attorney fees. Appellant contends that this conclusion is erroneous, since the Whatcom County Bar Association minimum fee schedule does not purport to establish *general* rates, but instead suggests reasonable *minimum* amounts to be used in determining attorney fees. Appellant points out that the Whatcom County minimum fee schedule lists nine comprehensive factors which enter into the fixing of fees,[1] and argues that the trial court

---

[1]"Among the factors which enter into the fixing of fees are:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite properly to conduct the cause.

"(2) Whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction and in which there is a reasonable expectation that otherwise he would be employed,

should not have rejected the offer of proof as to what the general rate would be for litigation of this kind taking into consideration all of the factors suggested in the fee schedule. We are not persuaded by this argument.

■ To the extent that there is any ambiguity in the statute's reference to *general* rates from *minimum* fee schedules, in construing the provision we are guided by two well-recognized general rules of statutory construction. The first is that the underlying purpose inherent in judicial interpretation of statutory enactments is to effectuate the objective or intent of the legislature. *Amburn v. Daly*, 81 Wn.2d 241, 245, 501 P.2d 178 (1972); *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971). The second principle is that courts will construe the language of a statute to make it purposeful and effective rather than futile and meaningless. *Davis v. Washington Toll Bridge Authority*, 57 Wn.2d 428, 439, 357 P.2d 710 (1960); *In re City of Kent*, 1 Wn. App. 737, 463 P.2d 661 (1969).

■ In this regard it may be noted that RCW 8.25.070

or will involve the loss of other business while employed in the particular case or antagonism with other clients.

"(3) The customary charges of members of the bar for similar services.

"(4) The amount involved in the controversy and the benefits resulting from the services.

"(5) The contingency or the certainty of the compensation.

"(6) The character of the employment whether casual or for an established and constant client.

"(7) The standing, experience and ability of the lawyer.

"(8) The relations existing between attorney and client in reference to other business and the amount of annual retainers, if any.

"(9) The ability of the client to pay.

"No one factor is controlling, and they vary in importance. Obviously, no formula can be devised which will automatically adjust itself to all cases.

"However, it is possible and it should be helpful for the Bar to determine upon a schedule of minimum fees as a guide to the practitioner.

"The schedule should not be regarded as fixing the amount of fee to be charged in any given case, but rather as a suggestion of the consensus of the opinion of this Bar as to the reasonable minimum amount."

prior to amendment provided for an award of "reasonable attorney's fees and reasonable expert witness fees actually incurred." That language had been construed by holding that the trial court had discretion to properly consider the following guidelines for determining reasonable attorney's fees, as suggested in Canon 12 of the Canons of Professional Ethics:

> In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

*In re Renton,* 79 Wn.2d 374, 377, 485 P.2d 613 (1971); *see also State v. Siler,* 79 Wn.2d 789, 489 P.2d 921 (1971). It is thus patently obvious that pursuant to RCW 8.25.070 prior to amendment, the trial court could properly consider substantially the exact factors in determining attorney fees that appellant now urges in this appeal. To construe the language of the 1971 amendment as allowing the trial court discretion in determining attorney fees according to the broad criteria urged by the appellant would be to deny any operative effect to the amendment whatsoever.

We deem it apparent that the legislature intended to limit the amount of attorney's fees which the state will pay the condemnee by requiring application of fixed maximums rather than authorizing broad discretionary judgment.

Such a construction of the 1971 amendment was implicit in Justice Rosellini's discussion of this legislation in *In re Seattle,* 79 Wn.2d 490, 494, 487 P.2d 777 (1971):

> The final argument of the city is that the legislature has defined the meaning of the word reasonable, as used in these statutes, by its amendment of one of them, RCW 8.25.070, by Engrossed Senate Bill No. 363 (Laws of 1971, Ex. Ses., ch. 39), providing for the allowance of fees based solely on minimum bar fee schedules for trial and hourly rates. It is true that the legislature has thus limited the amount of attorneys' fees which the state will pay the condemnee in a condemnation proceeding, but it has not placed a limitation upon the fees which the attorney may charge his client for his services in such an action. Thus the legislature has seen fit to provide that, in certain cases, the condemnee shall not necessarily be made whole. This is a substantive change in the law, not a mere interpretation.

We are of the opinion that the trial court properly concluded that as provided in the Whatcom County Bar Association minimum fee schedule, the general hourly rate for preparation was $30 and the general trial rate per day was $250.

The judgment is affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied March 28, 1974.

Review denied by Supreme Court July 26, 1974.