Tanja HARRIS, Appellant,

v.

Gregory KINARD, Appellee.

No. 80–1367.

District of Columbia Court of Appeals.

Argued Jan. 7, 1982.

Decided March 12, 1982.

Terrence J. Leahy, Washington, for appellant.

Gregory Kinard, pro se.

Before KELLY, NEBEKER and BELSON, Associate Judges.

NEBEKER, Associate Judge:

This appeal presents for our determination the propriety of the trial court's denial of a petition for support under the Uniform Reciprocal Enforcement of Support Act (URESA).[1] The petition, which sought support for appellant's two minor children, Yolanda and LeVar, was first filed in Maryland and was subsequently certified and transmitted in accordance with the applicable provisions[2] of the URESA to the Family Division of the Superior Court of the District of Columbia. The trial court dismissed with prejudice the paternity and support action on behalf of Yolanda as being time-barred under both D.C.Code 1978

---

1. D.C.Code 1973, § 30–301 *et seq.*

2. D.C.Code 1973, § 30–301 *et seq.;* Md.Ann. Code art. 89C, § 14 (1957).

Supp., § 16–2342, and Md.Ann.Code § 16–66(e) (1973 Repl. Vol. 2A). Appellant in urging reversal claims that: (1) the lower court erred by applying Maryland law to the issue of whether appellee owed a duty of support in a URESA action where Maryland is the initiating state and District of Columbia the responding state; (2) the lower court erred in applying a two-year statute of limitations; (3) even if the two-year limitation period does apply, the lower court erred by not finding that it was tolled during the minority of appellant; (4) even if the two-year limitation period applies, appellee was estopped to assert the statute of limitations defense; and (5) even if the two-year limitation period applies, it unconstitutionally discriminates against children born out of wedlock.[3] We reverse and remand for further proceedings consistent with this opinion.

### I

The petition was filed on March 1, 1978, a period of some eight months following the birth of LeVar Harris, and more than two years after the birth of Yolanda Harris. By answer filed January 11, 1979, appellee denied paternity and additionally raised as a defense the statute of limitations applicable to actions for paternity and support. The trial court here concluded in an opinion and order that under Maryland law the action for support brought on behalf of the child, Yolanda Harris, was filed beyond the time period allowed under Article 16, § 66(e) of the Maryland Paternity Proceedings Act, and is thus time-barred by the statute of limitations applicable to paternity actions. The court, citing *Cobbe v. Cobbe*, D.C.Mun.App., 163 A.2d 333 (1960), opined that in a URESA action, the function of the initiating state is to determine under its own law whether the petitioner is entitled to maintain an action, and further, whether the respondent owes a duty of support. The court, in accordance with its interpretation of *Cobbe*, went on to reason

that once a duty of support on the part of the respondent had been established under the law of the initiating jurisdiction, the responding state need only determine the nature and amount of necessary support.

The court held in the alternative that even if the law of the District of Columbia applied to this case, it would be barred by the District of Columbia statute of limitations provision. *See* D.C.Code 1978 Supp., § 16–2342. In so ruling, the court expressly rejected the argument that the District of Columbia two-year period of limitations in support actions is unconstitutional as violative of the Fifth and Fourteenth Amendments.

### II

The District of Columbia URESA was enacted to facilitate the enforcement of duties of support across state lines and to assure more uniform support policies. URESA instituted a process whereby actions filed by a petitioner in one state may be transferred to a state which may be able to obtain jurisdiction over the respondent.

In a URESA action, the duties of the District of Columbia court differ depending upon whether the District is the "initiating state" or the "responding state." The initiating state (in this case Maryland) is the state in which a proceeding pursuant to URESA or a substantially similar reciprocal law is commenced. D.C.Code 1973, § 30–302(b).[4] The responding state (here the District of Columbia) is a state in which a proceeding pursuant to the proceeding in the initiating state is or may be commenced. D.C.Code 1973, § 30–302(c).

Under both Maryland and District of Columbia URESA laws, the duty of the court in the state where a petition for support is filed is merely to determine if the petition sets forth a *prima facie* case for support. If Maryland is the initiating state, its courts must find that a petition "sets

---

**3.** The choice of law and related limitations issues are determinative in this case and this court need not address appellant's other claims.

**4.** The statute defines "state" to include the District of Columbia. *Id.* § 30–302(a).

*forth facts from which it may be determined* that the obligor owes a duty of support" and that a court of the responding state may obtain jurisdiction over the obligor. Md.Ann.Code art. 89C, § 14 (1957) (emphasis added).[5] If so, the court so certifies and transfers the petition to the responding state.[6]

The URESA provision of the District of Columbia and Maryland indicates that subsequent to the transfer of the petition, the court in the responding state will make an independent determination of whether the respondent in fact owes a duty of support to the petitioner. When the District as the responding state independently finds a duty of support as defined by District of Columbia URESA, it may order the defendant to pay such amount under such terms and conditions as the court may deem proper. D.C.Code 1973, § 30–315.[7]

The URESA provisions of Maryland and the District liberally define duties of support to include any duty of support imposed by statute or common law.[8] The District of Columbia statute includes a specific provision which governs the choice of law with respect to support.[9] D.C.Code 1973, § 30–304. Duties of support applicable under

Maryland URESA "are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought," and the obligor "is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." Md.Ann.Code art. 89C, § 7 (1957).

Therefore URESA, as enacted in both Maryland and the District of Columbia, intends that a two-step procedure be undertaken if a petition is filed in Maryland against a respondent who resides in the District of Columbia. Initially, the Maryland court examines the petition to determine whether it establishes a *prima facie* case for support. If the petition sets forth facts from which it may be determined that a duty of support exists, the case is transferred to the responding state. This primary examination amounts to a simple determination whether the petition on its face shows a duty of support as indicated by the existence of an obligor-obligee relationship. *Cobbe v. Cobbe, supra* at 336.

After the case has been certified and transferred, the District of Columbia must hold a hearing to ascertain whether the respondent in fact owes a duty of support.

**5.** The obligor is defined as the person who owes a duty of support, and the obligee is the person to whom a duty of support is owed. *Id.* § 2(h), (i).

**6.** Similarly, when the District of Columbia is the initiating state, the responsibilities of the Superior Court under D.C.Code 1973, § 30–310 are as follows:

If the court finds that a complaint initiated in the District of Columbia *sets forth facts from which it appears that the defendant owes as duty of support,* as defined in this chapter, and that a court of a responding State may obtain jurisdiction of the defendant, it shall so certify . . . . [Emphasis added.]

**7.** The Maryland statute analogously requires that the court of a responding state "*find* [ ] a duty of support" before it may order the respondent to furnish assistance. Md.Ann.Code art. 89C, § 23 (1957). This court has said that the URESA provisions enacted in Maryland and the District are identical." *Schlecht v. Schlecht,* D.C.App., 387 A.2d 575, 576 n.3 (1978).

**8.** D.C.Code 1973, § 30–302(e) provides:

"Duty of support" includes: (1) any duty of support imposed by statute or by common law, or by any court order, decree, or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate maintenance, or otherwise; (2) any duty of reimbursement imposed by law for moneys expended by a State or a political subdivision or an agency thereof for support, including institutional care; and (3) the duty imposed by section 30–320.

**9.** D.C.Code 1973, § 30–304 provides that:

Duties of support enforcible under this chapter are those imposed under the laws of any State in which the defendant was present during the period for which support is sought, or in which the dependent was present when the failure to support commenced or where the dependent is when the failure to support continues. The defendant shall be presumed to have been present in the responding State during the period for which support is sought until otherwise shown. [Footnote omitted.]

Since the respondent resides in the District of Columbia, the choice of law provision of URESA dictates that the law of this jurisdiction governs that determination. D.C. Code 1973, § 30–304.

Here, the trial court, in determining which law was applicable, did not mention the URESA choice of law provision. Further, the court's conclusion that District of Columbia law is applicable only to determine the amount of support failed to recognize that District of Columbia law, as the law of the responding jurisdiction, must also be applied to determine if there is any duty to support. This is in accordance with D.C.Code 1973, § 30–315 which provides that the court may issue support orders if it finds a duty to support.

■ The lower court cited *Cobbe, supra*, in support of its determination that the Maryland statute of limitations for paternity actions was applicable. The trial court referred to a passage [10] of the *Cobbe* decision which, read in isolation, contravened the intent of both the Maryland and District of Columbia URESA statutes regarding the appropriate roles of the initiating and responding jurisdictions in a URESA proceeding. In this section, Chief Judge Rover, in accordance with URESA, articulated that the initiating jurisdiction must determine at the outset whether the complainant qualifies under its own law to maintain the action—that is, whether the respondent owes a duty of support. That is a correct analysis. However, the court immediately went on to articulate that "the applicable law to determine defendant's liability for breach is governed by the law of the responding state." *Cobbe, supra* at 336 (citing *Edmonds v. Edmonds*, D.C.Mun. App., 146 A.2d 774 (1958). The bare words of this statement support the trial court's

determination that Maryland, as the initiating state, was to apply its own law to determine the statute of limitations issue. However, such a selective reading misconstrues the appropriate duties of the initiating and responding jurisdictions as contemplated under URESA and misstates the ruling in *Cobbe*. URESA does not intend that the sole responsibility of the responding state is merely to ascertain the amount of support owed. Rather, the responding state must, *de novo*, find a duty of support and only then, determine the extent of liability. A comprehensive reading of *Cobbe* compels this interpretation. In *Cobbe*, a minor instituted proceedings through her mother, as next friend against the father, a Florida resident, under this jurisdiction's URESA provisions. D.C.Code 1951 Supp., § 11–1601 *et seq*. *Cobbe* acknowledged its agreement with the Florida Supreme Court ruling which held that "the amount of such support, as well as a further finding as to the duty of support, must be determined by the court of the responding state." *Cobbe, supra* at 337 (quoting *Jackson v. Hall*, 97 So.2d 1, 3 (Fla.1957)). This particular passage more accurately describes the rule of *Cobbe* in not suggesting that the responding state's sole responsibility is to determine the amount of support. Rather the rule requires that the initiating jurisdiction apply its own law to make a cursory determination of whether there is a duty of support and then the responding jurisdiction will apply its own law to determine whether respondent has an undischarged duty to support given the facts and its statute of limitations period, as well as the amount of liability.[11] This court has reaffirmed the proposition that the District of Columbia courts must apply the law of this jurisdiction to determine a duty of support when the District is the responding state in a

---

**10.** *Cobbe, supra* at 336 states in part:

The duty of our courts, when the District of Columbia is the initiating jurisdiction, is to ascertain if "the defendant owes a duty of support" in the sense of there being an obligor-obligee relationship like that of husband-wife or parent-child. Thereafter, the applicable law to determine defendant's liability for the breach of that duty is governed by the

law of the responding state. [Footnote omitted.]

**11.** Even if the Maryland URESA controlled the issue of the duty to support, the choice of law provision in that statute would incorporate District of Columbia law by reference, since that is the residence of respondent. *See* Md.Ann.Code art. 89C, § 7 (1957).

URESA proceeding. *See Prager v. Smith*, D.C.Mun.App., 195 A.2d 257 (1963).

### III

■ The lower court, in the alternative, held that this action was barred by the District of Columbia statute of limitations for paternity actions. D.C.Code 1978 Supp., § 16–2342. This ruling was error. Rather, no limitations period is applicable to petitions under URESA.

D.C.Code 1978 Supp., § 16–2342 provides:

Proceedings over which the Division has jurisdiction under paragraphs (3) and (11) of section 11–1101 to establish parentage and provide for the support of a child born out of wedlock may be instituted after four months of pregnancy or within two years after the birth of the child, or within one year after the putative father or mother, as the case may be, has ceased making contribution for the support of the child. The time during which the respondent is absent from the jurisdiction shall be excluded from the computation of the time within which a complaint may be filed.

We, therefore, must examine paragraphs (3) and (11) of § 11–1101 to ascertain what types of proceedings are governed by the specified limitations provisions. D.C.Code 1981, § 11–1101 delineates specific actions over which the Family Division of the Superior Court has exclusive jurisdiction. Under § 11–1101(3), the court has exclusive jurisdiction over "actions to enforce support of person as required by law." Under § 11–1101(11), the court has exclusive jurisdiction of "proceedings to determine paternity of any child born out of wedlock." Claims which are filed under these two subsections are the only ones subject to the two-year limitation set forth in § 16–2342. The Family Division has exclusive jurisdiction over URESA actions not pursuant to § 11–1101(3) or (11), but rather pursuant to § 11–1101(10). Section 11–1101(10) grants exclusive jurisdiction to the Family Division over "proceedings under the Act of July 10, 1957 (D.C.Code §§ 30–301 to 30–324)," which is URESA. Therefore, the statute of

limitations period of § 16–2342 is not applicable to URESA petitions. Further, the District of Columbia URESA itself provides no statute of limitations.

Accordingly, the dismissal by the court of the complaint initiating reciprocal support proceedings as being time-barred was erroneous and the cause is remanded with instructions to conduct further appropriate proceedings.

*Reversed and remanded.*